OLSON and wife, Appellants, v. ST. CROIX VALLEY MEMORIAL HOSPITAL, INC., Respondent.

*No. 133. Argued September 6, 1972.—Decided October 5, 1972.*
(Also reported in 201 N. W. 2d 63.)

For the appellants there were briefs and oral argument by *Dorain E. Jensen* of Luck, attorney, and *John C. Mitby* of Green Bay, of counsel.

For the respondent there was a brief by *Garvey, O'Brien & Anderson* and oral argument by *Richard J. Kelly,* all of Eau Claire.

HEFFERNAN, J.   Plaintiffs' complaint alleges that in 1962 Judy Olson (nee Hagstrom) was given a blood transfusion at the St. Croix Valley Memorial Hospital. It is alleged that, because of negligent blood testing and typing, it was determined incorrectly that Judy Olson's blood was Rh positive when, in fact, her blood type was Rh negative.  She received a transfusion of Rh-positive blood.  Sometime thereafter, Judy married Nicholas Olson.  On December 1, 1966, she gave birth to a child which lived only seven hours; and on December 8, 1969, Judy delivered a stillborn child.  It is alleged that only then was it discovered that the wrong blood was given to Judy in 1962 and:

". . . that said Rh-positive blood was given in said transfusion and was a sensitizing stimulus which resulted in the formation of some anti Rh antibodies;

that the introduction of this blood type had an aggravating effect on the sensitized serologic mechanism causing the death of the children . . . ."

It is alleged that the loss of the "children" was the direct and proximate result of the negligent act of the hospital in mistyping of the blood and administration of the wrong kind of blood. Damages are claimed.

The trial judge sustained the demurrer to the complaint on the ground that the three-year statute of limitations had run. The applicable statutes are secs. 893.14 and 893.205 (1), Stats.:

"893.14. **Actions, time for commencing.** The following actions must be commenced within the periods respectively hereinafter prescribed after the cause of action has accrued . . . ."

"893.205. **Within 3 years.** Within 3 years: (1) An action to recover damages for injuries to the person for such injuries sustained . . . ."

Relying upon *Reistad v. Manz* (1960), 11 Wis. 2d 155, 105 N. W. 2d 324; *McCluskey v. Thranow* (1966), 31 Wis. 2d 245, 142 N. W. 2d 787; and *Volk v. McCormick* (1969), 41 Wis. 2d 654, 165 N. W. 2d 185, the trial judge concluded that those cases hold that an action for malpractice must be started within three years of the negligent act.

In each of the cases relied upon by the trial judge, the injury was sustained at the time of the negligent act. The holding of those cases was explained in *Holifield v. Setco Industries, Inc.* (1969), 42 Wis. 2d 750, 168 N. W. 2d 177. Therein it was pointed out at page 759:

"In at least the medical malpractice cases that have come to this court three points in time were involved: the time of the negligent act, the time of the injury, the time of discovery. The date of negligence and the

date of injury were the same date. That the injury did not become noticeable or was not in fact noticed until a later date is another question. The court was not separating time of negligence from time of injury. Where both were simultaneous, it was holding that the statute of limitations runs from that date, the time at which the cause of action must be concluded to have accrued."

We, therefore, have indicated that in a malpractice case the date of the negligent act is not necessarily the benchmark for the commencement of a period of limitations. Only in the event the injury occurs on the same date can it be said the cause of action then "accrues."

In the instant case, therefore, the question is when did the plaintiff sustain the injury that caused the accrual of a cause of action and commenced the running of the period of limitations.

The plaintiffs argue that the cause of action did not accrue until the second child was born dead in 1969 and that the action commenced in 1970 was timely. The defendant takes the position that the injury occurred when the transfusion was given in 1962 and that over eight years had elapsed before the action was commenced.

In determining the sufficiency of a complaint on demurrer, except for matters of judicial notice and other minor exceptions, a court is obliged to confine its inquiry to the facts stated in the complaint. It must be assumed that the demurrer admits as true all facts properly pleaded.

The trial judge concluded, and we agree, that the only reasonable interpretation to be given the complaint is that the plaintiff was injured at the time of the transfusion. The complaint states:

". . . that said Rh-positive blood was given in said transfusion and was a sensitizing stimulus which resulted in the formation of some anti Rh antibodies; that

the introduction of this blood type had an aggravating effect on the sensitized serologic mechanism . . . ."

From a reading of the complaint, it is apparent that it alleges that Judy Olson's capacity for future child-bearing was impaired upon the transfusion of the improper blood. She was injured on that date, and the statute of limitations commenced running at that time.

The complaint alleges that an impaired child was born to Judy Olson on December 1, 1966, and died shortly thereafter. A stillborn child was delivered in 1969. Since it is alleged that the introduction of the blood caused the death of the "children," it appears from the face of the complaint that, under any theory, the injury complained of could not have occurred later than December 1, 1966, four years prior to the commencement of the instant action. Even were we to consider the death of one of the children in 1966 as the event that triggered the cause of action, the 1970 lawsuit was brought too late. While the plaintiffs in their brief claim that it cannot be determined that the first child died because of the negligent transfusion, the complaint alleges that the transfusion was the cause, and it is the complaint that must be construed in determining whether the cause of action was commenced too late.

In view of the clear allegations of the complaint that an injury occurred at the time of the death of the first child in 1966, we deem that this case is not appropriate for further discussion of the "discovery rule" considered and rejected in *Reistad v. Manz, supra; McCluskey v. Thranow, supra;* and *Volk v. McCormick, supra*. While, as we pointed out in *McCluskey*, there may be merit to the discovery rule, the state of facts presented herein is not conducive to modification of the present holdings of this court.

Under the facts alleged, the first injury occurred in 1962. That injury commenced the period of limitations.

Subsequent consequential injuries alleged to have occurred in 1966 had no effect on a cause of action already accrued.

We also point out that the trial court afforded the plaintiffs the opportunity to plead over and, if possible, to allege a cause of action for products liability or breach of contract. They declined to plead over. Additionally, during oral argument, plaintiffs' counsel expressly stated that the only cause of action urged was negligence and that no theory of implied warranty, products liability, or implied contract was in issue. The statement of counsel was consistent with the complaint, in which only a cause of action for negligence is alleged.

While we decide this case solely on the question of the running of limitations, we point out the almost insurmountable problems of medical proof which the plaintiffs would assume in the course of trial. Plaintiffs' brief acknowledges that a healthy child was born to the parties on November 15, 1967. We also invite attention to the case of *Puhl v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. 2d 343, 354, 99 N. W. 2d 163, wherein we stated that, even though there was expert testimony supporting a cause of action, if the theory of medical causation is not "sufficiently established to have gained general acceptance," then no expert testimony which the plaintiffs might offer based on that theory would be sufficient, as a matter of law, to support a cause of action or a jury verdict based on that theory. We, of course, would not venture at this stage in this case to conclude that the theory of medical causation on which the plaintiffs' complaint is based is not "sufficiently established to have gained general acceptance." However, the course of oral argument indicated that the proposed medical evidence might well verge on the speculative.

The action was not brought within three years from the time in which the cause of action accrued. The demurrer was properly sustained.

*By the Court.*—Order affirmed; and cause remanded for the entry of judgment dismissing the plaintiffs' complaint.

HALLOWS, C. J. *(concurring)*. A cause of action does not accrue unless and until the negligent act causes injury. In many cases the negligent act causes simultaneous injury and the cause of action accrues at that time, not solely because the act of negligence then occurred but because the injury also then occurred. Without injury, an act of negligence is not actionable. This seems eminently clear from *Holifield v. Setco Industries, Inc.* (1969), 42 Wis. 2d 750, 168 N. W. 2d 177, explaining prior cases.[1]

The question is, what is an injury for the purpose of constituting a cause of action? The majority opinion considers the plaintiff was injured at the time of the alleged negligent blood transfusion in 1962 because of the potential impairment of the plaintiff's capacity for future childbearing. This so-called injury was unknown to the plaintiff. Realistically no injury, which would give rise to a cause of action, arose until the first child died shortly after birth. This death the majority considers a consequential injury or a result of the improper blood. But the improper blood in the plaintiff's body was not an injury but a part of the chain of causation allegedly resulting in the death of the child. If the plaintiff had never married, presumably she never would have suffered any actual damage from the improper blood.

---

[1] *Reistad v. Manz* (1960), 11 Wis. 2d 155, 105 N. W. 2d 324; *McCluskey v. Thranow* (1966), 31 Wis. 2d 245, 142 N. W. 2d 787; *Volk v. McCormick* (1969), 41 Wis. 2d 654, 165 N. W. 2d 185.

Obviously the majority's view of the injury of the improper blood had no consequential effect on the birth of the second child. Under this writer's view, there was no injury, but under the majority's view there was an injury but no damage; hence under the majority view, we have a damageless injury. The question of what constitutes a cause of action and the concept of a statute of limitation is basically a question of public policy. I agree this is not a case to reconsider the rule prevalent in some states that a cause of action does not arise until the discovery of the injury; but a physical condition which has the potential to cause definable, compensable damage and is speculative prior to that time is not an injury which ought to constitute a necessary element of a cause of action.

I am authorized to state Mr. Justice ROBERT W. HANSEN concurs in this opinion.